## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| CARRIER VIBRATING EQUIPMENT, INC., ) ) ) Plaintiff, ) ) v. ) ) GENERAL KINEMATICS CORPORATION, ) ) ) Defendant. ) | Case No. 10-cv-5110 Judge Robert M. Dow, Jr. |

## MEMORANDUM OPINION AND ORDER

Plaintiff Carrier Vibrating Equipment ("Carrier") sued Defendant General Kinematics Corporation ("Kinematics"), alleging infringement of Carrier's U.S. Patent 7,712,513 ("the '513 patent"). Kinematics counter-claimed, first seeking a declaratory judgment that the '513 patent is invalid and unenforceable, and then, following summary judgment, also seeking a declaratory judgment that Carrier's U.S. Patent 8,096,406 ("the '406 patent") is invalid and unenforceable.[1] Carrier has moved for Rule 41 dismissal of its infringement claims [100] and contends that this dismissal also requires dismissing Kinematic's declaratory judgment counterclaims due to the lack of case or controversy between Carrier and Kinematics. For the reasons set forth below, the Court concludes that, even with the dismissal of Carrier's infringement claims, an actual controversy exists. Therefore, in its discretion, the Court grants in part and denies in part Carrier's motion to dismiss [100]. Carrier's infringement claims are voluntarily dismissed with prejudice as to Kinematics' "SOSM" shakeout conveyors installed and operating at

---

[1] The '406 patent did not issue until January 2012. It resulted from a continuation of the application that resulted in the '513 patent and has similar claims to the '513 patent.

GM/Defiance. However, the Court denies the motion [100] as it pertains to dismissal of Kinematics' counterclaims.

I. **Background**

The technology in this case involves a method for controlling the retention time of a casting on a vibratory conveyor, typically used in an industrial environment such as a foundry or other molding facility. When used in the foundry process, these vibratory conveyors, known as "shakeouts," are used to shake sand or other surrounding mold media used in the casting process from the metal casting itself. The '513 patent, entitled "System and Method for Controlling Casting Shakeout Retention," discloses a system and method for controlling the retention time – the time that a casting is retained in its mold – of a casting being transported on a vibratory conveyor. This is accomplished first by imparting a vibratory force to the conveyor at a predetermined angle to the conveying surface whereby the predetermined angle determines the retention time, and then by modifying that angle. The '513 patent was issued on May 11, 2010, based upon a patent application filed on April 4, 2006.

Prior to August, 2010, Carrier discovered an advertisement for Kinematic's V2 Shakeout Conveyor system ("V2 Shakeout conveyor") on Kinematic's website. Kinematic's website characterized its V2 Shakeout conveyor having a "control system * * * utiliz[ing] vector based measurement to monitor and maintain the proper shakeout angle for your casting type, as well as the ability to adjust travel speed to optimize shakeout time for various casting sizes and shapes." Based on this advertisement, Carrier believed that actual use of a GK V2 Shakeout that performed as advertised would violate the '513 Patent and therefore filed this infringement action in August 2010. Kinematics filed an answer and counterclaim seeking a declaratory

2

judgment that the '513 Patent is invalid and unenforceable. On September 13, 2013, Kinematics amended its counterclaim to also declare the '406 Patent invalid and unenforceable.

After this lawsuit was filed, Kinematics successfully bid on a proposal to install vibratory shakeout conveyors at GM/Defiance. The bid specifications for the GM/Defiance project required a shakeout conveyor that "allow[s] for a variable angle of attack and stroke adjustment during the cycle." Since the V2 Shakeout was the only shakeout conveyor advertised by Kinematics as having this capability, Carrier believed that Kinematics would install its V2 Shakeout at GM/Defiance, and when installed and operating at GM/Defiance in accordance with the bid specifications, Carrier believed the V2 Shakeout would infringe at least claims 1, 27, 30, 31/32 and 33 of the '513 Patent.

Early in this case, the parties agreed to a "preemptive" litigation plan, whereby the Court would first decide Kinematics' counterclaims that: (i) claims 1-4, 27 and 30 of Carrier's '513 Patent were invalid under 35 U.S.C. § 102(b) due to an offer of sale made by Carrier to Ross Sand Castings of Orville Ohio; and (ii) claims 31 and 32 of the '513 Patent were invalid under 35 U.S.C. § 112 for lack of an adequate written description. During the pendency of the "preemptive" phase of this case, the '406 Patent was issued to Carrier. The claims of the '406 Patent are similar to the claims of the '513 Patent but are not restricted to use of a shakeout conveyor to control retention time.

On September 27, 2012, the Court issued its summary judgment opinions. During November 2012, Carrier received information that Kinematic's V2 shakeout conveyors were not installed at GM/Defiance. Carrier then requested permission to conduct focused discovery to determine whether the shakeout conveyors actually installed at GM/Defiance infringed Carrier's '513 and/or '406 Patents, which the Court granted. After physical inspection of the Kinematics

3

shakeout conveyors actually installed at GM/Defiance, and after deposing Kinematics' vice president, Carrier confirmed that Kinematic did not install its V2 Shakeout conveyors at GM/Defiance. Instead, Kinematics installed shakeout single mass ("SOSM", sometimes called "VF") shakeout conveyors. Notably, Kinematics' SOSM/VF shakeout conveyors do not have the capability to change the angle of attack. Consequently, Carrier determined that Kinematics' SOSM conveyors installed and used at GM/Defiance do not infringe the '513 Patent or the '406 Patent. Because Kinematics' SOSM/VF shakeout conveyors, when used, would not infringe any method claim of the '513 Patent, Carrier concluded that it has no infringement claim under the '513 Patent against Kinematic. Thus, Carrier dismissed its infringement claims with prejudice against the Kinematics' SOSM/VF Shakeout Conveyors built and installed at GM/Defiance, but only those conveyors.

## II. Analysis

Carrier contends that dismissal of its infringement claims mandates dismissal of Kinematics' counterclaims seeking to declare Carrier's patents invalid because there is no actual infringement case or controversy between Carrier and Kinematics. More specifically, Carrier contends that because there is no actual GK V2 Shakeout conveyor or GK V2 fluid bed processor in existence in the United States, there is and can be no infringement of Carrier's '513 Patent. Not surprisingly, Kinematics has no objection to Carrier's dismissal of its infringement claims with prejudice as to Kinematics' "VF" shakeout conveyors installed and operating at GM/Defiance and no objection to Carrier's voluntary dismissal of its infringement complaint as to Kinematics' V2 conveyors. However, Kinematics objects to Carrier's motion for dismissal of the Kinematics' amended counterclaims seeking declarations that the subject '513 and '406 patents asserted by Carrier are invalid and unenforceable.

### A. Legal Standards

Kinematics' counterclaims are brought pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.,* which provides, in pertinent part, that "[i]n a case of actual controversy within its jurisdiction * * * any court of the United States * * * may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). A "case of actual controversy" for purposes of § 2201(a) means a case or controversy as those terms are employed in Article III of the Constitution delimiting the scope of the federal judicial power. U.S. Const. art. III, § 2, cl. 1; see also *Cat Tech LLC v.TubeMaster, Inc.,* 528 F.3d 871, 879 (Fed. Cir. 2008); *Teva Pharms. USA, Inc. v. Novartis Pharms. Corp.,* 482 F.3d 1330, 1338 (Fed. Cir. 2007). A court has broad discretion in deciding whether to exercise jurisdiction over claims for declaratory relief. "The Declaratory Judgment Act provides that a court *may* declare the rights and other legal relations of any interested party, not that it *must* do so." *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 136 (2007) (emphasis in original, internal quotations omitted). Thus, a court has "unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton v. Seven Falls Co.,* 515 U.S. 277, 286–88 (1995). "In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Id.*

In *MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118 (2007), the Supreme Court articulated a new standard of justiciability in patent cases seeking declaratory relief. Before *MedImmune,* the Federal Circuit had applied a two-prong test in patent cases to determine the existence of declaratory judgment jurisdiction. The first prong examined "whether conduct by the patentee creates a reasonable apprehension on the part of the declaratory judgment

plaintiff that it will face an infringement suit." *SanDisk Corp. v. STMicroelectronics, Inc.,* 480 F.3d 1372, 1379 (Fed. Cir. 2007). The second prong examined "whether conduct by the declaratory judgment plaintiff amounts to infringing activity or demonstrates concrete steps taken with the intent to conduct such activity." *Id.* In *MedImmune,* the Supreme Court rejected the first prong of the Federal Circuit's test as a strict requirement, and thus ostensibly relaxed the test for declaratory judgment jurisdiction in patent cases. See *MedImmune,* 549 U.S. at 132 n. 11. The Supreme Court also restated its totality-of-the-circumstances test: the parties' dispute must be "definite and concrete, touching the legal relations of parties having adverse legal interests," "real and substantial," and "admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id.* at 127. "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.*

Since *MedImmune,* the Federal Circuit has issued several opinions that help to define the scope of declaratory judgment jurisdiction in patent cases. Although the Supreme Court rejected the requirement that a patentee's conduct create a "reasonable apprehension" of suit, the Federal Circuit has reiterated that a party seeking declaratory relief generally must be able to point to some affirmative acts by the patentee to assert rights under a patent. See *SanDisk,* 480 F.3d at 1380–81 ("In the context of conduct prior to the existence of a license, declaratory judgment jurisdiction generally will not arise merely on the basis that a party learns of the existence of a patent owned by another or even perceives such a patent to pose a risk of infringement, without some affirmative act by the patentee."). In addition, the second prong—"whether there has been

meaningful preparation to conduct potentially infringing activity"—remains an important element in the totality of the circumstances which must be considered in determining whether a declaratory judgment is appropriate. *Cat Tech LLC v. TubeMaster, Inc.,* 528 F.3d 871, 880 (Fed. Cir. 2008) (noting that in every action for declaratory relief the analysis of whether an actual controversy exists "must be calibrated to the particular facts of each case").

In a post-*MedImmune* decision, the Federal Circuit explained, "Article III jurisdiction may be met where the patentee takes a position that puts the declaratory judgment plaintiff in the position of either pursuing arguably illegal behavior or abandoning that which he claims a right to do." *SanDisk Corp.,* 480 F.3d at 1381; see also *Patch Prods., Inc. v. L.B. Games, Inc.,* 2009 WL 1249981, at *4 (W.D. Wis. May 6, 2009); *Tuthill Corp. v. ArvinMeritor, Inc.,* 2008 WL 4200888, at *3 (N.D. Ill. Sept. 5, 2008). Thus, "where a patentee asserts rights under a patent based on certain identified ongoing or planned activity of another party, and where that party contends that it has the right to engage in the accused activity without license, an Article III case or controversy will arise and the party need not risk a suit for infringement by engaging in the identified activity before seeking a declaration of its legal rights." *SanDisk,* 480 F.3d at 1381.

**B. Application**

As the party seeking declaratory relief, Kinematics bears the burden of establishing that declaratory judgment jurisdiction exists. See *Benitec Australia, Ltd. v. Nucleonics, Inc.,* 495 F.3d 1340, 1344 (Fed. Cir. 2007). Carrier argues that Kinematics has not met its burden because Kinematics' only V2 activity is advertising on its website, and those advertisements are devoid of the structural details required to conduct a proper infringement analysis. Carrier points out that all of the claims of the '513 and '406 Patents are "method claims," which require that the V2 shakeout conveyors or fluid bed processors be used as set forth in the claims, not just built or in

existence or even sold, in order for infringement to occur. In other words, Carrier contends that because it is not asserting an infringement claim against the SOSM/VF conveyors installed at GM/Defiance and it cannot assert an infringement claim against the allegedly "non-existent" V2 shakeout conveyor or "non-existent" V2 fluid bed processor at this time, there is no controversy to support Kinematics' counterclaims. See, *e.g.*, *Microchip Tech., Inc. v. Chamberlain Grp., Inc.,* 441 F.3d 936, 944 (Fed. Cir. 2006) ("Without an underlying legal cause of action, any adverse economic interest that the declaratory plaintiff may have against the declaratory defendant is not a legally cognizable interest sufficient to confer declaratory judgment jurisdiction."). At the same time, however, Carrier has been explicit that it intends to continue to pursue infringement claims against Kinematics if Kinematics sells one of its V2 machines: "To be sure, if there were an actual Kinematics' V2 conveyor in actual operation, Carrier would likely assert an infringement claim against such as actual device, if operating in an actual infringing manner."

The Federal Circuit has expressly stated that "a party need not have engaged in the actual manufacture or sale of a potentially infringing product to obtain a declaratory judgment." *Cat Tech*, 528 F.3d at 881. Instead, there must be a showing of "meaningful preparation" for making or using the product. *Id.* Here, Kinematics has established the design for its V2 control technology, which has been described in detail for this court. See *General Kinematics Corp. v Carrier Vibrating Equipment, Inc.*, Case No. 08cv1264, Docket Entry 94 (Steffes Decl.). Kinematics built and tested a V2-equipped shakeout conveyor. Although the prototype has since been dismantled (by removing the V2 associated devices from the trough), Kinematics represents that the V2 control system remains in existence, has not been destroyed, and would not require substantial modification from how it was set up on the prototype machine. Further,

Carrier inspected and examined the V2-equipped prototype and represented to the Court that it had a complete understanding of how the V2 technology works.

Kinematics represents that it began offering its V2 technology in late 2009, has continued to advertise the V2 products on its website, and is ready and able to provide V2 conveyors to any customer interested in the product. The record reflects that the machines at issue in this case are heavy, expensive equipment, which are built to order and designed to fit within a factory line. Kinematics' vice president represents that it has on multiple occasions issued quotes for the V2 machines (both a shakeout and fluid bed conveyor) for potential customers within the United States, including GM.[2] According to Kinematics, it generally prepares quotes for a potential customer outlining the design requirements to meet the customers' specific needs and the cost for installation of the product. Engineered drawings are then prepared individually for each installation. Once a quote is accepted, a vibratory conveyor typically takes three to six months to build. Kinematics represents that it has no intention or expectation that it will need to significantly modify or alter the technology tested in the prototype in order to install products for its customers, and that it is ready and able to ship the V2 technology on a normal delivery schedule as soon as an order is received.

After being repeatedly accused of infringement, Kinematics is understandably hesitant to proceed with the manufacture of large, expensive machinery before resolving the infringement issues raised by Carrier. See *MedImmune*, 549 US at 133-34 (noting that a party need not "bet the farm" or risk treble damages by taking actions that are accused of infringement before seeking a declaratory judgment). Further, Carrier's basis for alleging infringement was never the actual sale of the V2 (as it filed suit prior to Kinematics' sale to GM/Defiance), but rather

---

[2] According to Kinematics, in order to shield GM from involvement in the present suit, Kinematics proposed and delivered an alternate technology for the conveyors sold to GM.

9

Kinematics' offer to sell the V2. Kinematics' is still offering to sell the V2 technology. Thus, the Court concludes that the V2 technology is sufficiently immediate and real to satisfy declaratory judgment jurisdiction. See also *Cat Tech*, 528 F.3d at 881 (finding declaratory judgment jurisdiction where the accused infringer was prepared to produce devices upon customer orders within a normal delivery schedule and did not expect to have to make significant changes); *cf. Revolution Eyewear v. Aspex Eyewear, Inc.*, 556 F.3d 1294, 1299 (Fed. Cir. 2009) (reversing the district court's dismissal of counterclaims and emphasizing that the parties were already in infringement litigation initiated by the patentee, the infringer had stated its intention to sell the accused products in the future, and that it was reasonable to assume that the patentee would file suit again as soon as the sales began).[3]

## IV. Conclusion

For these reasons, the Court concludes that, even with the dismissal of Carrier's infringement claims, an actual controversy exists. Therefore, in its discretion, the Court grants in part and denies in part Carrier's motion to dismiss [100]. Carrier's infringement claims are voluntarily dismissed with prejudice as to Kinematics' "SOSM" shakeout conveyors installed and operating at GM/Defiance. However, the Court denies the motion [100] as it pertains to dismissal of Kinematics' counterclaims.

Dated: April 7, 2014

Robert M. Dow, Jr.
United States District Judge

---

[3] The situation in *Revolution Eyewear* differs from the present situation because the alleged infringer had prior sales and stock in inventory. However, the product involved was eyeglasses rather than custom foundry equipment, which admittedly is much less expensive to manufacture.

10